**No. 57435.**—Calhawaii Co. *v*. United States, protest 171419–K (Los Angeles).

RAO, Judge: This case involves the question of the proper dutiable classification of certain imported articles described in the entry as flower frogs with pins.

Each of the items enumerated on the invoice is composed of a lead base from which protrude, at close and regular intervals, pins made from a nonrusting material, such as brass or bronze. It is stipulated that the articles are in chief value of lead.

In classifying this merchandise, the collector applied the provision in paragraph 339 of the Tariff Act of 1930, for household utensils, and accordingly assessed duty at the rate of 40 per centum ad valorem. The collector's action is here alleged to be erroneous, it being the contention of the plaintiff that the merchandise at bar consists of articles wholly or in chief value of lead, not plated, which are dutiable at the rate of 2 cents per pound, but not less than 15 per centum nor more than 45 per centum ad valorem, by virtue of the provisions of paragraph 397 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802.

Two of the pin frogs taken from the shipment here involved are in evidence as plaintiff's collective illustrative exhibit 1. They are stated to be typical of all of the articles included in the instant importation by way of composition and structure, differing only in respect of size and shape.

Plaintiff's testimony shows that these articles are used in homes, in offices, in florist shops, and other places where flowers are used as decorations, and that they are employed in the following manner:

The frog is placed on the bottom of a receptacle as a shallow bowl for fish or pan to hold the flowers in an up-right position. This is done by forcing the stems over the pins so that they support the flowers and they keep them from falling down.

It is further established that this is the only use for articles such as those here involved.

In this action, plaintiff does not seek to overcome the finding, implicit in the collector's classification of the merchandise at bar within the provisions of said paragraph 339, that these articles are chiefly used in the household. Instead, it advances the proposition that flower frog pins, as parts of a decorative unit—as "essential elements in a decorative arrangement of flowers"—are used for purely ornamental purposes and, hence, by virtue of the principles enunciated in the cases of *United States* v. *Ellis Silver Co.*, 16 Ct. Cust. Appls. 570, T. D. 43297; *United States* v. *The Friedlaender Co.*, 21 C. C. P. A. (Customs) 103, T. D. 46445; and *Ignaz Strauss & Co., Inc.* v. *United States*, 9 Cust. Ct. 342, C. D. 710, are excluded from the purview of the provision for household utensils in paragraph 339, *supra*.

To be sure, the cited cases stand for the general proposition urged by the plaintiff. Household utensils are such articles only as are "designed and chiefly used for utilitarian purposes [in the household]—utensils—" *United States* v. *Ellis Silver Co., supra*. It follows, therefore, that articles designed and intended for purely ornamental or decorative purposes, having little or no utilitarian value, are not to be considered household utensils within the meaning of said paragraph 339, and the foregoing authorities so hold.

The answer to the question whether the merchandise at bar falls within one or the other of these categories would seem to be supplied by the appearance, structure, and composition of the samples in evidence in this case. Samples are, of course, potent witnesses in classification cases. *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. (Customs) 219, T. D. 45995; *American Express Company* v. *United States*, 39 C. C. P. A. (Customs) 8, C. A. D. 456. That *per se* the samples here involved serve no ornamental purpose is patently obvious. They are neither inherently decorative, nor of a type which ordinarily would be displayed for any ornamental effect. In fact, it is questionable whether, when in use, they would even be visible.

Moreover, the function of these articles, as established through the testimony of plaintiff's own witness, is a strictly utilitarian one. They merely hold, in up-

right positions, flowers which are set into low-walled bowls. That the over-all effect created by a floral display may be an ornamental one does not serve to endow these articles with a character which they do not inherently possess. Their purpose is functional and utilitarian, rather than decorative.

Neither does it avail plaintiff to urge that flower frogs are "parts" or "essential elements" in a "decorative unit." A bowl or other vessel into which a frog may be placed before it is filled with flowers is a complete entity without that additional accessory. In no sense can it justifiably be maintained that a flower frog is a part of any vessel with which it may jointly be used. It may be moved from one bowl to another, and the purpose for which it is used is not affected by the nature or quality of the container.

The articles at bar are in a class with such items as placecard stands, metal picture frames, bird cages, flower and fruit bowls, bonbon dishes, and various types of vases which have in the past been held to be household utensils. *United Bead Corp.* v. *United States*, 68 Treas. Dec. 830, T. D. 48043; *F. W. Woolworth Co.* v. *United States*, 68 Treas. Dec. 228, T. D. 47857; *United States* v. *Ellis Silver Co.*, *supra*; *United States* v. *The Friedlaender Co.*, *supra*. Their classification in like manner is dictated.

The evidence in this case is not of such character as would tend to overcome the presumption of correctness attaching to the collector's classification of the merchandise at bar as household utensils, or to establish that flower frog pins are designed, intended, or used for any inherent ornamental purpose. All claims in the protest are therefore overruled

Judgment will be entered accordingly.